**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FRANK J.,

                Claimant,

        v.

ANDREW SAUL, Commissioner
of Social Security,

                Respondent.

No. 19 C 3176

Magistrate Judge Jeffrey T. Gilbert

**MEMORANDUM OPINION AND ORDER**

Claimant Frank J.[1] ("Claimant") seeks review of the final decision of Respondent Andrew

Saul,[2] Commissioner of Social Security ("Commissioner"), denying Claimant's application for

disability insurance benefits under Title II of the Social Security Act ("Act"). Pursuant to 28

U.S.C. § 636(c) and Local Rule 73.1, the parties signed and filed a document titled "Consent to

Exercise of Jurisdiction of a United States Magistrate Judge" for all proceedings, including entry

of final judgment. *See* [ECF No. 11]. At that time, as he is now, Claimant was proceeding *pro se.*

After the case was reassigned to the designated magistrate judge, Claimant objected to the

reassignment and filed a Motion to Withdraw Consent to Exercise of Jurisdiction by a Magistrate

Judge [ECF Nos. 16, 20] and a Motion to Seek Judicial Recusal Rule 18 [ECF No. 21]. On October

16, 2019, this Court denied Claimant's Motions [ECF Nos. 16, 20, 21] and issued an Order finding

that the case properly had been reassigned to the magistrate judge on consent and there were no

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), the Court has substituted Commissioner Saul as the named defendant.

grounds for recusal. *See* October 16, 2019 Order [ECF No. 22]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

After his Motions were denied, Claimant requested additional time to attempt to find an attorney to represent him in this case. *See* [ECF No. 23]. Claimant, however, was unable to retain counsel and later informed the Court he would represent himself. *See* [ECF No. 24]. Because he is proceeding *pro se*, the Court accommodated Claimant's request to present his argument to the Court orally. *See* [ECF Nos. 22, 24].

Oral argument was held on January 8, 2020, during which Claimant argued that he was disabled and unable to work, the Administrative Law Judge's ("ALJ") decision was wrong, and he should have been awarded disability benefits. *See generally* January 8, 2020 Hearing Transcript, [ECF No. 28]. On February 28, 2020, the Commissioner filed a written response to Claimant's oral presentation. *See* Commissioner's Resp. Brief, [ECF No. 30]. Due to the COVID-19 pandemic and the limitations on in-person hearings, the Court was delayed in scheduling another in-person hearing for Claimant to reply to the Commissioner's written submission. A second hearing eventually was held on September 22, 2020, during which Claimant was given the opportunity to make an oral presentation in response to the Commissioner's brief. *See generally* September 22, 2020 Hearing Transcript, [ECF No. 39]. This matter now is ripe for review.

For the reasons discussed below, Claimant's request to reverse the ALJ's decision and to award him disability insurance benefits is denied, and the Commissioner's decision is affirmed.

## PROCEDURAL HISTORY BEFORE THE COMMISSION

On September 12, 2016, Claimant filed an application for disability insurance benefits alleging a disability beginning on May 30, 2015. (R. 198-200). His application was denied initially on December 16, 2016 (R. 122), and upon reconsideration on March 28, 2017 (R. 123-

24), after which Claimant requested a hearing before an ALJ. (R. 130-32). On February 26, 2018, Claimant appeared and testified at a hearing before ALJ Michael Hellman. (R. 33-92). At the hearing, Claimant was represented by attorney Rasheda Armstrong. (R. 190). During the hearing, the ALJ also heard testimony from vocational expert ("VE") Clifford Brady. (R. 85-91).

On May 4, 2018, the ALJ issued his decision denying Claimant's application for disability insurance benefits. (R. 20-28). In finding Claimant was not disabled within the meaning of the Act, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. *See* 20 C.F.R. § 416.920(a). At step one, the ALJ found that Claimant had not engaged in any substantial gainful activity since his alleged disability onset date, which is May 30, 2015. (R. 23). At step two, the ALJ found that Claimant had a severe impairment of hypertension as defined by 20 C.F.R. §§ 404.1520(c) and 416.920(c). (R. 23). The ALJ also noted that Claimant's medical records included references to prostate cancer, sleep apnea, degenerative changes in the right wrist, left foot and T3 vertebra, sensory polyneuropathy, chronic obstructive pulmonary disease ("COPD"), and decreased vision in his right eye. (R. 23). The ALJ, however, found that these impairments "do not rise to the level of severity contemplated by 404.152(c) and are therefore non-severe medically determinable impairments." (R. 23). The ALJ further stated that "there is no evidence in the record to suggest that any of these impairments result in any significant functional limitations that more than minimally affect the claimant's ability to perform basic work activities." (R. 23).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525 and 404.1526). (R. 24). Although there is not a specific listing for hypertension, the ALJ explained that the listing in

4.00(H)(1) notes that hypertension will be evaluated by reference to specific body systems that are affected. (R. 24). The ALJ found there no evidence in Claimant's medical treatment history that indicates any specific body system is affected by his hypertension, and therefore, the ALJ concluded that Claimant did not meet or medically equal the criteria of any listing. (R. 25). In arriving at this conclusion, the ALJ relied on the medical opinions in the record that documented Claimant's reported symptoms, physical examinations, and treatment history. (R. 25).

The ALJ then found Claimant had the residual functional capacity ("RFC") to perform medium work.[3] (R. 25). Based on this RFC, the ALJ found at step four that Claimant was capable of performing his past relevant work as a deputy sheriff and security guard. (R. 27). Based on all of these reasons, at step five, the ALJ found Claimant was not disabled under the Act. (R. 28). The Appeals Council declined to review the matter on March 15, 2019 (R. 1-3), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. *See* 42 U.S.C. § 405(g); *see also Smith v. Berryhill,* 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart,* 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether an ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-676 (7th Cir. 2008).

"affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also, Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek,* 139 S. Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted).

In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

At the court hearings in this case during which Claimant presented his oral argument in support of his request that the ALJ's decision be reversed, Claimant argued he cannot work because he is disabled. Claimant disputed the ALJ's assessment of his physical capabilities, in particular as to his visual and cardiopulmonary impairments. *See* January 8, 2020 Hearing Transcript, [ECF No. 28], at 6, 7, 11. Claimant argued overall that the ALJ incorrectly assessed his physical

5

condition and failed to properly consider his medical history. He believes the ALJ should have awarded him disability benefits based on his diminished physical capabilities and his medical and visual impairments. *See generally* January 8, 2020 Hearing Transcript, [ECF No. 28]. The Court will address Claimant's arguments below.

## I. The ALJ's Decision Is Supported By Substantial Evidence

In finding Claimant not disabled, the ALJ relied on the medical opinions contained in the Claimant's medical records which include the opinions of the state agency medical consultants, Dr. Aquino and Dr. Gotanco, and the opinion of Dr. Coulson, the Veterans' Administration ("VA") doctor who examined Claimant and assessed his eye impairment. (R. 27); *see also* (R. 96-99, 107-10, 501-08).

Dr. Aquino reviewed Claimant's records in December 2016. Among other records, Dr. Aquino reviewed an internal medicine consultative exam performed by Dr. Patil. (R. 93-101); *see also* (R. 578-82). Based on his review of the records submitted by Claimant, Dr. Aquino concluded that Claimant's only severe impairment was essential hypertension.[4] (R. 96). Regarding any work restrictions, Dr. Aquino opined that that Claimant physically was capable of lifting and/or carrying 50 pounds occasionally and 25 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday, and could sit about 6 hours in an 8-hour workday. ( R. 98). He also opined that Claimant did not have any postural, manipulative, visual, communicative, or environmental limitations. (R. 98). In summary, Dr. Aquino found that Claimant was capable of performing the

---

[4] Dr. Aquino found that prostate cancer, COPD, loss of central visual acuity, hyperlipidemia, gastritis and duodenitis, and sleep-related breathing disorders were non-severe impairments. (R. 96). Under the regulations, an "impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a).

full range of medium exertional work. *See* Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *6 (describing requirements of medium work); 20 C.F.R. § 404.1567(c) (same).

Dr. Gotanco reviewed Claimant's records at the reconsideration level on March 27, 2017. (R. 103-12). Dr. Gotanco concurred with Dr. Aquino. (R. 107, 109). The ALJ's analysis at step two, finding that Claimant's hypertension is a severe impairment and his other impairments were non-severe (R. 23-24), is consistent with the medical opinions of Dr. Aquino and Dr. Gotanco. (R. 96, 107).

The ALJ also credited the opinion of Dr. Coulson, who conducted an in-person VA Compensation & Pension examination for Claimant's eye impairment in May 2015. (R. 24); *see also* (R. 501-08). Dr. Coulson noted diagnoses of right eye injury and cataracts, and he indicated that Claimant had poor vision and loss of a visual field in the right eye. (R. 502-07). In the "Functional impact" section of the examination form," however, Dr. Coulson indicated that Claimant's eye condition would not impact his ability to work. (R. 508).

The ALJ's conclusion that Claimant remained capable of performing the full range of medium work is consistent with the opinions of Dr. Aquino and Dr. Gotanco (R. 25), and the ALJ's conclusion that Claimant did not have any significant limitations attributable to his visual impairment is consistent with Dr. Coulson's opinion (R. 27) that Claimant's visual impairment would not impact his ability to work. The record considered by the ALJ does not contain any other contradictory medical opinion suggesting Claimant was more limited than the findings made by Dr. Aquino, Dr. Gotanco, and Dr. Coulson.

The Seventh Circuit has affirmed that an ALJ may rely on the uncontradicted opinions of reviewing physicians as substantial evidence to support his decision. *See, e.g., Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004); *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 680 (7th

Cir. 2010). An ALJ is "entitled to rely on medical experts when no contrary evidence is presented." *Filus v. Astrue*, 694 F.3d 863, 867 (7th Cir. 2012); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). In this case, there was no other medical opinion of record before the ALJ that suggests that any greater limitations are required than the limitations identified by Dr. Aquino and Dr. Gotanco upon which the ALJ relied. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 803 (7th Cir. 2005). The Court finds that ALJ acted well within his discretion in crediting the medical opinions of Dr. Aquino, Dr. Gotanco, and Dr. Coulson and that the ALJ's decision is consistent with those medical opinions.

Claimant did not submit to the ALJ any medical opinion that his impairments caused more limitations than the ALJ assessed. Courts consistently have held that a claimant must submit "medical evidence that supports [his] claims of disability." *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008). It is a claimant's burden, and not the ALJ's, to establish his disability. *See Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). To meet this burden, a claimant has to "establish not just the existence of [his impairments], but to provide evidence that they support specific limitations affecting [his] capacity to work." *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018). In this case, Claimant did not submit any other medical opinion that supported his claims of disability and/or that contradicted the opinions of Dr. Aquino, Dr. Gotanco, and Dr. Coulson. The ALJ, therefore, was entitled to rely on the uncontradicted opinions of Dr. Aquino, Dr. Gotanco, and Dr. Coulson, and those opinions constitute substantial evidence to support the ALJ's finding that Claimant was not disabled at the time his decision was issued.[5]

---

[5] The Court addresses below in Section III of this Memorandum Opinion and Order the evidence that Claimant brought to the hearing before this Court and upon which he relies in an effort to show that if the ALJ had that evidence before him his conclusion as to whether Claimant is disabled would have been different. *See* Claimant's Exhibits Tendered at January 8, 2020 Hearing, [ECF No. 27].

The Court understands that Claimant believes the ALJ should have weighed the evidence differently than he did. Yet this argument misunderstands the Court's role here. The Court cannot reweigh the medical evidence or substitute its judgment for the ALJ's analysis with respect to how the medical opinions should be balanced. *See Pepper v. Colvin,* 712 F.3d 351, 362 (7th Cir. 2013). The ALJ provided a narrative discussion of the medical evidence, explained the weight he gave to each of the medical opinions, and offered reasonable explanations for his decision. The Court cannot conclude the ALJ's analysis is not supported by substantial evidence. Further, more directly to Claimant's point that the Court should reweigh the evidence and come to a different conclusion than the ALJ, the Court is not persuaded, on this record, that the ALJ improperly weighed the medical opinion evidence in this case.

## II. The ALJ Properly Considered The Record Evidence Of Claimant's Impairments And Substantial Evidence Supports The ALJ's Assessment

In addition to relying on the medical opinions in the record, the ALJ also explained how the other record evidence supported his findings and why he did not find that Claimant was as limited as he alleged. An ALJ must consider a claimant's own statements about his impairments and any pain he experiences. Social Security Regulation 16-3p establishes a two-step process for evaluating a claimant's subjective statements. *See* SSR 16-3p, 2017 WL 5180304 (October 25, 2017); 20 C.F.R. § 404.1529. First, an ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3; 20 C.F.R. § 404.1529. Then, once an underlying "physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established," an ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities…." *Id.* When evaluating

a claimant's symptoms, "an ALJ must consider several factors, including the claimant's daily activities, h[is] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009) (citations omitted); *see also* SSR 16-3p, 2017 WL 5180304, at *3; 20 C.F.R. § 404.1529(c).

An ALJ's assessment of a claimant's symptoms and limitations is entitled to deference unless it is "patently wrong," which means that the decision lacks any explanation or support. *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). In drawing conclusions about a claimant's credibility, "the ALJ must explain [his] decision in such a way that allows the court to determine whether [he] reached [his] decision in a rational manner, logically based on [his] specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816. An ALJ's credibility determination, or assessment of a claimant's subjective testimony, must be given deference because the ALJ is in a unique position to hear, see, and assess witnesses. *Id.* at 815. An ALJ, however, is not required to "discuss every snippet of information from the medical record that might be inconsistent" with the rest of the record. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

In this case, the ALJ expressed doubt that Claimant was as limited as he claimed. Based on his review of Claimant's medical records and the testimony he heard at the administrative hearing, the ALJ explained why he concluded that Claimant's medically determinable impairments, including prostate cancer, sleep apnea, degenerative changes in the right wrist, left foot and T3 vertebra, sensory polyneuropathy, COPD, decreased vision in his right eye, and his obesity, were non-severe and that they would not significantly limit Claimant's ability to do basic

work activity. (R. 23-24). Based on the Court's review of the record, the ALJ's decision is supported by substantial evidence and is not patently wrong on the evidence before him.

For example, the ALJ noted that the record showed evidence of right wrist, left foot, and T3 vertebra abnormalities, and that Claimant reported that he required inserts in his shoes due to foot problems. (R. 23-24). The ALJ, however, reasonably concluded that those impairments were non-severe because Claimant consistently presented with no sensory, strength, musculoskeletal deficits, or gait abnormalities on physical examination. (R. 23-24, citing Exhibits 2F-6F). In his response brief, the Commissioner identified specific pages within the exhibits cited by the ALJ that support his findings, including normal senses (R. 413, 419, 478, 695, 702, 710, 719), normal strength (R. 542, 643, 672, 674, 763), normal musculoskeletal examinations (R. 312, 372-73, 380, 397, 519, 542, 549, 559, 702, 710, 719-20, 731, 763), and normal gait and no difficulty walking with no assistive device (R. 324, 326, 338, 460-61, 537, 541, 556, 559, 648, 649, 660, 672, 674-75, 702, 710, 723). *See* Commissioner's Resp., [ECF No. 30], at 5-6. These medical records reasonably support the ALJ's conclusion that "despite alleging multiple physical impairments as the basis for his inability to sustain work, the claimant routinely presents with normal physical examinations, which note normal strength, gait, and range of motion, and no neurological, cardiovascular, or ophthalmological abnormalities." (R. 26).

Claimant specifically disputed the ALJ's finding that he requested an assistive device for ambulation, and the ALJ's conclusion that there was no evidence that any treatment provider had determined that he had a medical requirement or reason for needing such a device. *See* January 8, 2020 Hearing Transcript, [ECF No. 28], at 10; *see also* (R. 27). The Commissioner conceded that the examination note that the ALJ cited is somewhat ambiguous—it states: "Equipment Requested: Rollator or Rolling Walker." Commissioner's Resp., [ECF No 30], at 6. That could be read as

11

Claimant requested the device or possibly that the medical treater requested it. The ALJ, however, noted that the physical examination findings in Claimant's treatment records consistently indicated that Claimant had a normal gait and no difficulty ambulating without an assistive device (R. 23, 24), and there is nothing in the medical record that indicates Claimant required an assistive device to ambulate. To the contrary, there are medical records from June 2017 that note Claimant did not have any difficulty walking and did not have any assistive device. *See* (R. Ex. 6F; 698, 723). Under these circumstances, the Court finds that it was not unreasonable for the ALJ to infer that Claimant requested and received an assistive device without there being any documented medical need for one, and Claimant did not argue in the hearing that his alleged use of a cane interfered with his ability to work.

The ALJ also considered the evidence regarding Claimant's cardiopulmonary impairments. (R. 24). The ALJ noted Claimant's testimony of chronic bronchitis and shortness of breath, but ultimately found that the medical treatment records indicated that his COPD was managed with medications and that there were no signs Claimant required extraordinary respiratory intervention or had exacerbations that required immediate treatment. (R. 24). In addition, the ALJ noted that Claimant "consistently presented with no respiratory abnormalities on physical examination." (R. 24); *see also* (R. 412, 460, 542, 559, 643). The ALJ also pointed out that Dr. Aquino and Dr. Gotanco consistently opined that Claimant had no significant limitations due to any respiratory impairments. (R. 24); *see also* (R. 98, 109). Furthermore, the ALJ noted that cardiac stress tests showed cardiac and ventilatory problems within normal limitations, and chest radiographs and echocardiograms consistently revealed no abnormalities. (R. 26); *see also* (R. 450, 456, 477, 497, 544-46, 554-55, 568-69). Other than Claimant's own testimony, he has not identified any record evidence that contradicts these findings.

12

Importantly, even if the ALJ had included additional restrictions in Claimant's RFC to avoid concentrated exposure to cardiopulmonary irritants, the VE testified that those additional restrictions would not affect Claimant's ability to do his past work or a range of other jobs. (R. 87). At the hearing, the ALJ specifically asked the VE to consider an individual with Claimant's same background who was limited to medium exertional work (as was Claimant according to the medical opinions in this case) and who also needed to "avoid concentrated exposure to environmental irritants, such as fumes, odors, dusts, gases, poorly ventilated areas, and chemicals." (R. 87). The VE responded that this hypothetical individual still would be capable of performing Claimant's deputy sheriff position per the Dictionary of Occupational Titles ("DOT"), and his security job per the DOT and as he actually performed it. (R. 87). The VE further testified that this hypothetical individual also could do other jobs that exist in significant numbers nationally, such as a hand packager (141,000 jobs nationally within this RFC), a production helper (26,300 jobs nationally), or an assembler (34,500 jobs nationally). (R. 89). Thus, even if the ALJ had accommodated Claimant with further restrictions than Dr. Aquino and Dr. Gotanco had opined were necessary, the Court finds that the result would have been the same based on the VE's testimony.

Claimant also disputes the ALJ's determination that his vision impairment would not affect his ability to work. *See* January 8, 2020 Hearing Transcript, [ECF No. 28], at 6. Again, the ALJ cited and discussed substantial record evidence to support his finding. (R. 24). First, the ALJ noted that Claimant had not undergone any surgical procedures and no medical professional had recommended that he undergo surgery relating to the vision in his right eye. (R. 24); *see* 20 C.F.R. § 404.1529(c)(5) (recognizing that an ALJ may consider a claimant's course of treatment when assessing subjective allegations of symptoms). Second, the ALJ noted that Claimant alleged that

his vision impairment stemmed from a traumatic eye injury that occurred in 1976 (which Claimant confirmed at the hearing before this Court), and that Claimant was able to work for more than 40 years despite this injury. (R. 24). As another district court observed in a similar case involving a longstanding visual impairment, an ALJ may properly consider a claimant's history of working despite having that impairment. *See Kujac v. Colvin*, 2016 WL 7839339, at *12 (E.D. Wis. Sept. 30, 2016). In *Pepper v. Colvin*, 712 F.3d 351 (7th Cir. 2013), the Seventh Circuit likewise affirmed a decision involving a history of working despite a longstanding eye impairment, holding that the ALJ had properly noted that "all but one of Pepper's documented eye impairments were present several years before Pepper stopped working . . . ." 712 F.3d at 364.

The ALJ also found that the medical record did not document a progressive decline in vision as of the date of the hearing, contrary to Claimant's argument. The ALJ recognized the evidence showed that Claimant recently had an evaluation of his eye injury at the VA for his Compensation and Pension examination. (R. 24). Based on that examination, the ALJ noted that Dr. Coulson indicated Claimant's decreased vision would not interfere with his ability to work. (R. 24); *see also* (R. 508). In addition, the ALJ also noted that Claimant's work as a security guard for several years after leaving the sheriff's office and his ability to transport himself via motorcycle and other vehicles was inconsistent with his allegations of significant visual impairment. (R. 24); *see also* (R. 51, 52, 54, 55, 61, 62, 419, 671). Finally, not only did Dr. Coulson indicate that Claimant's visual impairment would not affect his ability to work, but Dr. Aquino and Dr. Gotanco also did not find any visual limitations. (R. 24).

Claimant strongly disputes the ALJ's finding that his ability to ride a motorcycle was "inconsistent with significant vision impairment." (R. 24). Claimant says that while he used to ride a motorcycle, he has not done so for some time and he has difficulty now just walking around

14

to say nothing of riding a motorcycle. *See* January 8, 2020 Hearing Transcript, [ECF No. 28], at 9. Specifically, the part of the ALJ's decision that Claimant challenges is the ALJ's statement that Claimant "reports he can transport himself via motorcycle and other vehicles, which is inconsistent with significant visual impairment." (R. 24) (citing Ex. 6F; Hearing Testimony). The Court notes that it is Exhibit 3F and not 6F that includes the medical records which show Claimant sought treatment at Ingalls Hospital in September 2014 after being involved in a motor vehicle accident while driving his motorcycle. (R. 3F; 353, 356, 362). While the Court cannot find any reference in the ALJ hearing transcript that Claimant currently operates a motorcycle, Claimant did admit to the ALJ that he drove himself to the hearing. (R. 62). So, while Claimant argues that he no longer rides a motorcycle and has not done so for quite some time (*id.*), that does not necessarily undercut the ALJ's ultimate assessment on the record evidence before him that Claimant did not have a significant visual impairment (R. 24) given that Claimant had operated a motorcycle during a period of time in which he claims he had a significant visual impairment, and that he was able to drive himself to the hearing and to drive a vehicle on other occasions despite initially testifying that he would drive only in an emergency. (R. 60-63).[6]

The Commissioner concedes that there are medical records that indicate Claimant has limited vision in his right eye and that the VA did assess a "30% evaluation" due to Claimant's eye impairment. *See* Commissioner's Resp. [ECF No. 30], at 9 (citing R. 294, 504, 505, 580). But that does not mean the ALJ improperly assessed how or whether the issues with Claimant's vision would disable him from work. Even if this Court agreed with Claimant and concluded that the

---

[6] Claimant initially testified before the ALJ that "in an emergency, I can get in my car and get where I need to go, but I'd rather not drive, because it seem like any fumes or anything like that it just gets into my chest." (R. 60-61). But upon further questioning by the ALJ, Claimant acknowledged that he had applied for a job driving a medivan (although his thinking in doing so was that he eventually could have moved into an inside job with the company), and that "I could get around if I have to." (R. 61-62). On this record, therefore, the Court cannot say that the ALJ's determination was patently wrong or not supported by substantial evidence.

15

ALJ should have found that his right eye impairment caused some functional limitations despite the contrary record evidence, the Court finds that any such error would be harmless because the VE's testimony clearly establishes that Claimant still would be able to work even if he had only monocular vision.  (R. 88-89).  The VE did not opine that there would be no work Claimant could do until the ALJ asked about a hypothetical individual with Claimant's characteristics but who, unlike Claimant, was limited to light exertions.  (R. 89).  It was only at that point that the VE opined there would be no occupations the hypothetical claimant could perform.  (*Id.*).

"[H]armless error . . . is applicable to judicial review of administrative decisions and is thus an exception to the Chenery doctrine." *Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010). "[T]he party that seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted." *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009). Under a harmless error review, a court must look "at the evidence in the record" to determine if it "can predict with great confidence what the result on remand will be." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011); *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (holding that remand is not warranted when it is "predictable with great confidence that the agency will reinstate its decision on remand").

Applying that legal analysis here, and as the Court noted above, the ALJ specifically asked the VE whether jobs would be available for a hypothetical individual of Claimant's background who was further "limited to occupations not requiring the use of binocular vision", that is "where there is no right-sided near, far, and peripheral acuity."  (R. 88). The VE testified that this restriction to monocular vision would eliminate Claimant's past work, but there would still be other jobs in the national economy that an individual with such an impairment could perform as identified above.  (R. 88-89).

Accordingly, even if the ALJ had concluded that Claimant's right eye impairment limited him to only monocular vision, there still would have been a significant number of jobs in the national economy that he could perform, which still would have directed a finding of "not disabled" at step five. *See Cooley v. Berryhill*, 738 F. App'x 877, 881 (7th Cir. 2018) (even if ALJ erred in determining that claimant could perform past work, such error is harmless if there are a significant number of other jobs in the national economy that the claimant could perform); s*ee also Guranovich v. Astrue*, 465 F. App'x 541, 543-44 (7th Cir. 2012) (same). At most, the ALJ's omission of a restriction to monocular vision is harmless error because even if that limitation had been included, it still would not have changed the outcome.

Finally, at the hearing before this Court, Claimant recounted his long and consistent history of working demanding jobs. *See* January 8, 2020 Hearing Transcript, [ECF No. 28], at 4-8. The Commissioner does not dispute Claimant's work history, and the ALJ noted in his opinion that: "although the claimant testified that he left his past work at the sheriff's office due to his visual difficulties, the record shows that the claimant had been working for years up to that point with no problems. Furthermore, after leaving the sheriff's office, the claimant worked as a security guard for several years, including until recently where he was working two days a week." (R. 24). The Court recognizes that Claimant now is saying that he cannot work because of his worsening eyesight from an injury he suffered years ago. The ALJ, however, pointed out Claimant worked for years after his original injury without complaint and without interference with his ability to work. (*Id.*)

The ALJ also cited to Claimant's conservative treatment history and his ability to perform a wide variety of daily activities as support for finding that Claimant is capable of medium work. (R. 27). The Seventh Circuit has held that it is reasonable for an ALJ to consider a claimant's

17

conservative treatment. *See Simila v. Astrue,* 573 F.3d 503, 519 (7th Cir. 2009) (upholding finding based in part on "relatively conservative" treatment); *see also Butler v. Astrue*, 2013 WL 660020, at *14 (N.D. Ill. Feb. 22, 2013) ("Courts have acknowledged that an ALJ can reasonably consider a claimant's conservative treatment history."). As the Commissioner correctly points out, there is no medical opinion in the record finding that Claimant is disabled.

While Claimant disagrees with the ALJ's conclusions and the denial of benefits, this Court cannot reweigh the evidence, decide facts anew, or second-guess the ALJ's judgment under the deferential standard of review applicable in this case. The Court finds that the ALJ reasonably considered Claimant's work history, his physical and visual impairments, the range of his daily activities, and his conservative record of treatment, sufficiently built a logical bridge between the record evidence and his conclusion, and ultimately concluded that Claimant was not as limited as he alleged. The Court cannot displace the ALJ's judgment, nor does the Court find any error in the ALJ's assessment or his ultimate decision to deny benefits.

The Court recognizes that Claimant seems to be arguing that his assertedly disabling conditions have worsened over time, even since the ALJ hearing and decision, and that if the ALJ had that information or it were to be provided to him now, then his decision would have been or now would be different. As discussed in the section below, though, the evidence Claimant presented during the hearings before this Court does not bear the weight Claimant places on it.

### III. There Is Not A Reasonable Probability That The Evidence Claimant Submitted To This Court Would Have Changed The Outcome Of The ALJ's Decision

The sixth sentence of 42 U.S.C. § 405(g) permits a reviewing court to remand "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). "New" evidence is evidence "not in existence or available to the claimant at the time of the administrative

18

proceeding." *Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003) (internal quotation and citations omitted). Evidence is "material" when "there is a reasonable probability that the evidence would have led to a different outcome, and it pertains to plaintiff's health conditions during the relevant time period." *Reginald J. v. Saul*, 2019 WL 6877189, at *5 (N.D. Ill. Dec. 17, 2019) (citing *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005); *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997)).

Claimant brought to the first hearing before this Court documents that he feels undercut the ALJ's decision and show that he is entitled to benefits. *See* Hearing Exhibits, [ECF No. 27]. The Court is not persuaded that the evidence Claimant submitted would have had any significant impact on the ALJ's assessment. First, Claimant submitted some documentation of medical bills from various providers for services rendered. No specifics are provided about the nature of the treatment received nor do the documents include any medical opinion as to how the conditions treated may impact Claimant. There is no dispute that Claimant received medical treatment from many providers before and after the hearing in this case, and the record before the ALJ contained hundreds of pages of medical records and his treatment history. As discussed above, the ALJ explained how he weighed those treatment records in his decision.

Second, Claimant submitted a February 2019 letter from the Jesse Brown VA Medical Center stating that he recently had a chest CT scan that showed emphysema on the upper part of his lungs. The Court notes that emphysema is a type of COPD.[7] In his decision, the ALJ recognized that Claimant has COPD, but found that it was a non-severe impairment. (R. 23-24). The letter Claimant submitted does not say anything about the severity of his COPD nor does it

---

[7] *See* MedlinePlus:Emphysema, U.S. Nat'l Library of Medicine, https://medlineplus.gov/emphysema.html (last visited November 2, 2020).

contradict the doctors' opinions in the record (and the ALJ's conclusion) that Claimant's COPD was a non-severe impairment that did not require any further work restrictions. The Seventh Circuit has said that a diagnosis alone does not compel a finding of disability. *See Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998); *see also Mary Ann R. v. Saul*, 2019 WL 4645445, at *3 (N.D. Ill. Sept. 24, 2019) (holding that diagnoses and test results, by themselves, are not evidence of disability). In addition, the VE's testimony would support a finding that Claimant would be able to perform his past work, as well as a significant number of other jobs, with an additional restriction of no concentrated exposure to environmental irritants. (R. 87). The Court, therefore, finds that there is not a reasonable probability this chest CT scan would have changed the ALJ's decision.

Third, Claimant submitted an undated page from a VA evaluation at which he reported to the VA examiner that he had recurrent tinnitus which he attributed to his history of being exposed to noise during his military service. *See* January 8, 2020 Hearing Transcript, [ECF No. 28], at 18. Again, the Court finds that there is not a reasonable probability that this report in a VA evaluation would have changed the outcome of the ALJ's decision. The record does not contain any underlying diagnosis for tinnitus, and the SSRs require that a claimant's symptoms will not be found to affect his ability to do basic work activities "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b). Such an impairment "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. It also is relevant that the VA evaluation appears to document Claimant's own reports of symptoms to the examiner, and courts have recognized that "[s]ubjective allegations of disabling symptoms cannot alone support a finding of disability." *Purcell v. Colvin*, 2014 WL 4403174, at *13 (N.D. Ill. Sept. 3, 2014) (citing *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012)). Because there is not any objective medical evidence in the

record or any medical opinion discussing Claimant's alleged tinnitus or any work-related functional restrictions, the Court is not persuaded the ALJ's RFC determination would change if this case were remanded for consideration of this evidence.

Fourth, Claimant submitted a page from a January 2019 VA Compensation & Pension examination during which a physician indicated that Claimant's eye condition impacted his ability to work—specifically, Claimant would require monocular limitations and restrictions. *See* January 8, 2020 Hearing Transcript, [ECF No. 28], at 19; *see also* Hearing Exhibits, [ECF No. 27], at 7 ("The Veteran has monocular limitations and restrictions."). The VE's uncontradicted testimony, however, establishes that if Claimant were limited to jobs "not requiring the use of binocular vision" with "no right-sided near, far, and peripheral acuity," he would not be able to perform his past work, but he still would be able to perform a significant number of jobs in the national economy. (R. 88-89); *see also Cooley*, 738 F. App'x at 881 (even if ALJ erred in determining that claimant could perform past work, such error is harmless if there are a significant number of other jobs in the national economy that the claimant could perform); *Guranovich*, 465 F. App'x at 543-44 (same). Therefore, at a minimum, the VE's testimony establishes that an additional restriction to jobs requiring only monocular vision would not have changed the ALJ's assessment.

The Court finds that there is not a reasonable probability that any of the evidence Claimant submitted at the hearing before this Court would have influenced or changed the ALJ's decision. The Court understands that Claimant believes that he was not treated fairly by the ALJ during his administrative hearing and that the ALJ's findings and conclusions were wrong. However, there is substantial evidence in the record that supports the ALJ's findings, and this Court must give deference to those findings under applicable law even if there is room for disagreement and even if the Court were to disagree with the ALJ's conclusion, which it does not on the record presented.

To the extent Claimant argues that there is evidence to show that his condition decidedly is worse and more disabling today than what the ALJ found it to be, that evidence simply is not in the record before this Court. As discussed above, it is a claimant's burden (and not the ALJ's responsibility) to establish his disability. *See Summers*, 864 F.3d at 527. The record shows that the ALJ gave great weight to and appropriately relied upon the medical opinions in the record when he assessed Claimant's physical capabilities and any work-related restrictions that would be required due to his impairments. The ALJ reasonably found that Claimant's allegations of disabling limitations were not consistent with the medical opinions of record, Claimant's range of daily activities, and his medical history and conservative course of treatment. Because the ALJ's decision is reasonable and supported by substantial evidence, his decision must be affirmed.

Finally, the Court appreciates that Claimant believes his medical conditions were dire at the time he appeared before the ALJ for a hearing, that they have worsened since May 4, 2018, which is the date the ALJ issued his decision, and that the additional evidence Claimant brought to this Court's attention would have changed the ALJ's decision had he known about it. As discussed above, the evidence Claimant has brought forth to date does not support that argument or bear the weight Claimant places on it.

## CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, Claimant's request to award him disability insurance benefits is denied, and the Commissioner's decision is affirmed.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: November 3, 2020

22